IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES D. HALLER,

       Petitioner,               No. 2:10-cv-3446 WBS DAD P

    vs.

WARDEN BITER,

       Respondent.         FINDINGS & RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on April 6, 2007 in the Shasta County Superior Court on charges of making criminal threats, assault with a deadly weapon, and stalking.  He seeks federal habeas relief on the following grounds: (1) the trial court erred in denying him the right to present evidence at sentencing, (2) his sentence of seventy-eight years to life in state prison constitutes cruel and unusual punishment, (3) the trial court abused its discretion when it refused to strike one of his prior convictions at the time of sentencing, and (4) the trial court abused its discretion when it imposed consecutive sentences upon him.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for federal habeas corpus relief be denied.

1

BACKGROUND

In its partially published opinion affirming petitioner's judgment of conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant James Daniel Haller appeals following his conviction on multiple counts of criminal threats (Pen. Code, § 422)[2], stalking (§ 646.9, subd. (a)), and assault with a deadly weapon, a knife (§ 245, subd. (a)(1)). Defendant contends the trial court (1) erred in refusing to allow defendant to present evidence at the sentencing hearing, (2) abused its discretion in failing to strike one of two prior convictions, (3) abused its discretion in imposing consecutive sentences, and (4) imposed a cruel and/or unusual punishment under the state and federal Constitutions.
>
> In the published portion of the opinion, we shall conclude defendant's sentence does not constitute cruel or unusual punishment. In the unpublished portion, we reject defendant's other contentions of error. We shall therefore affirm the judgment.
>
> FACTUAL AND PROCEDURAL BACKGROUND
>
> Defendant was charged with (1) criminal threats (§ 422) against his ex-wife Jacqueline Runyon on June 25, 2004; (2) criminal threats against Runyon's husband Jerry Cole on June 25, 2004; (3) criminal threats against Runyon on June 26, 2004; (4) criminal threats against Cole on June 26, 2004; (5) assault on Cole with a deadly weapon (§ 245) on June 26, 2004; and (6) stalking (§ 646.9) Runyon between May 24, 2004, and June 28, 2004 by willfully, maliciously and repeatedly following her, harassing her, and making a credible threat with the intent that she be placed in reasonable fear for the safety of herself and her family. The information also alleged defendant had two prior serious felonies (§ 1170.12) – a June 2004 conviction for criminal threats, and a February 2000 conviction for battery with serious bodily injury (§ 243, subd. (d)) – and a prior prison term (§ 667.5, subd. (b)) for the 2000 conviction. The information also alleged, for sentence enhancement purposes under sections 1170.12 (three strikes law), 667.5 (same), and 646.9 (stalking after conviction for criminal threats or spousal abuse): A 2004 felony conviction for criminal threats (§ 422); a 2000 felony conviction for battery with serious bodily injury (§ 243, subd. (d)); and a prior prison term (§ 667.5) related to the 2000 conviction.

---

[1] People v. Haller, 174 Cal. App.4th 1080, 1083-87 (2009).

[2] Undesignated statutory references are to the Penal Code.

Evidence adduced at trial included the following:

Defendant had a history of domestic violence during his marriage to Runyon.  In 1994, he punched her in the mouth, drawing blood and loosening her teeth (resulting in a misdemeanor spousal abuse conviction).  In 1997, he threw an ashtray at her, hitting the back of her neck.  In 1998, he punched her in the mouth (resulting in a misdemeanor spousal abuse conviction).  When Runyon tried to leave defendant, he told her that if he could not have her, "nobody would."  Runyon eventually divorced defendant.  Despite a restraining order, defendant would not let go.  In February 2003, he loitered outside Runyon's workplace.  In March and May 2003, he went to her house and left when she called the police.  In June 2003, Runyon was sleeping at the home of friends when she awoke to find defendant standing over her.  Her son dragged him out of the house.  Later, defendant drove by the house and said they "better have fire insurance."  He eventually pled no contest to stalking and criminal threats and was placed on probation with credit for time served.

Meanwhile, Runyon met Cole in October 2003, moved in with him in November 2003, and later married him in November 2004.

In June 2004, defendant, freshly released from custody on the 2003 stalking, began leaving threatening phone messages for Runyon and Cole.  Defendant called 40 to 50 times a day and threatened Cole with death, dismemberment, sodomy, and torture.  On June 23, 2004, Runyon was in the yard hanging laundry when she heard defendant's voice say, "Oh, so that's where you're living."  She ran inside without seeing defendant.

On June 25, 2004, defendant made multiple threatening phone calls.  In one call, he said he was going to come over, rape Cole, "cut his thing off and stick it down his throat and make [Runyon] watch."  Around 8:00 p.m., defendant appeared at Runyon's home with his teenage son Joshua and yelled, "Jerry, come out or I will kill you."  Joshua broke a window with his fist.  Defendant and Joshua left when the police were called.  Runyon could not sleep that night because she was afraid defendant would break into her home.  Cole sat on the couch all night, keeping guard.  The next day, he had friends come to keep guard so he could sleep.

Defendant continued his threatening phone calls all day on June 26, 2004.  The answering machine recorded the following call from defendant at 9:42 p.m.:

"Jackie and Jerry you know what?  I am gonna come and stick that glass pipe right up your fuckin' hot ass and cut your nuts off and just your fuckin' asshole puckers up and shove 'em down her fuckin' throat Jerry . . . .  [D]on't go to sleep, 'cause you know what?  I'm comin' you mother fucker, I'm fuckin' comin'.  Can you

hear that Jackie?  You fucked up.  You burnt the bridge.  You fuckin' bitch . . . .  I'm gonna fuck your fuckin' world up, let's bring the mother fuckin', move in that substation, move in that mother fuckin' substation 'cause you know what Jerry?  And you know what Jackie?  And Jerry you know what?  I think it would be best to kick her fuckin' ass out right now 'cause that's my fuckin' wife and I'm coming to fuckin' take her."

Defendant immediately called back and said simply, "Hell."  Two minutes later, he called and said, "I'm gonna fuckin' fuck you guys' world up."  One minute later, he called again and said, "Jerry Cole and Jackie Haller you fuckin' Jerry, you know it dude, Jackie you know what?  You, you, you're, you're a chicken shit, you have no heart and it just floored me you loved me twenty-two fuckin' years and then you that, that shit you're in love with that mother fucker, I'm gonna take that glass pipe Jackie 'cause his asshole's quiverin' while I'm fuckin' him right in front of you."

Defendant called again and said he was coming over to kill them.  Runyon called the police, Cole retrieved a shotgun from the bedroom, and Cole's brother-in-law (Mike) went outside with a baseball bat.

Defendant showed up, brandishing a knife with a 12–inch blade.  Mike called out a warning that defendant had a knife.  Cole did not hear what Mike said but came out the front door with the shotgun, saw defendant with a shiny object in his hand, and said, "Freeze motherfucker."  Defendant did not answer but kept moving.  Cole fired the gun once, hitting defendant in the groin.  Defendant fell to the ground.  From a sitting position, he tried to throw the knife, crawled to where it fell and tried to throw it again.  Police recovered a knife at the scene.

Defendant testified in his own behalf. He did not deny the threatening phone calls but says he was intoxicated and does not remember specifics.  He went to the victims' home to try to "smooth everything over" and "maybe try to reconcile and get back together with her."  He denied bringing a knife.  He recalled only exchanging words with a man, and seeing the flash of a gun.

Defendant' son Joshua, who did not live with his mother, testified about breaking the window.  He was at a market with his father when he saw a boy riding a bicycle belonging to Joshua's brother (who lived with their mother).  Joshua asked where the boy got the bike and thus learned where Joshua's mother and brother were living.  Joshua told defendant to stay out of sight and tried to return the bike to his brother but was rebuffed by his brother and mother.  Joshua was angry that they wanted nothing to do with him and therefore hit the window.

/////

4

The defense presented an acquaintance of Cole's who testified that Cole bragged about contriving a self-defense situation to send his wife's ex-husband to prison for life.  The acquaintance had had his own altercation with Cole.

The jury found defendant guilty on all counts.  The trial court found true the allegations of prior convictions and prior prison term.

In sentencing defendant in June 2007, the trial court selected Count Five (assault with deadly weapon) as the principal term and imposed a sentence of 25 years to life in prison.  The court imposed a consecutive sentence of 25 years to life for Count One (criminal threats to Runyon on June 25, 2004), and the same for Count Three (criminal threats to Runyon on June 26, 2004)  Each of these three terms was enhanced by one year for the prior prison term (§ 667.5).  On Counts Two and Four (criminal threats to Cole), the court imposed concurrent terms of 25 years to life, enhanced by one year for the prior prison term.  Sentence on Count Six (stalking) was stayed pursuant to section 654.  The court thus sentenced defendant to life in prison with possibility of parole, with a minimum of 78 years.

Defendant committed these offenses while on probation for the 2004 conviction for criminal threat against Runyon (case No. 03F3515).  The court revoked probation and sentenced defendant to four years, eight months for the prior case, to be served consecutively to the sentence on the current case.

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

/////

1
2
3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

4
5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8    For purposes of applying § 2254(d)(1), "clearly established federal law" consists

9  of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v.

10  Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

11  (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

12  clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

13  859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

14    A state court decision is "contrary to" clearly established federal law if it applies a

15  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

16  Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640

17  (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

18  grant the writ if the state court identifies the correct governing legal principle from the Supreme

19  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

20  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

21  F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

22  simply because that court concludes in its independent judgment that the relevant state-court

23  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

24

25
26

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other

explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).[4]

II.   Petitioner's Claims

A.   Right of Allocution

In his first claim for relief petitioner asserts that the sentencing judge violated his right to due process in refusing to allow him to call witnesses and to speak on his own behalf at the time of his sentencing.  (Doc. No. 1 (Pet.) at 4.)  Specifically, petitioner argues:

> Petitioner was denied right to call witnesses to mitigate at sentencing.  Probation report was a complete fabrication and had the court allowed petitioner the right to allocation [sic] at sentencing this discrepancy surely would have been brought to light.  Petitioner is entitled to a voice at sentencing, court denied this right to petitioner by denying witnesses.

---

[4]   The United States Supreme Court has recently granted certiorari in a case apparently to consider this issue.  See Williams v. Cavazos, 646 F.3d 626, 639-41 (9th Cir. 2011), cert. granted in part, ___U.S.___, 132 S. Ct. 1088 (2012).

1   (Id.)

2   The California Court of Appeal rejected petitioner's argument in this regard,

3   reasoning as follows:

4   **I. Evidence at Sentencing Hearing**

5   Defendant contends the trial court erred in refusing to allow him to
present evidence at the sentencing hearing. We see no grounds for

6   reversal.

7   **A. Background**

8   At the sentencing hearing, the trial court expressed its tentative
decision to impose a total sentence of 78 years to life in prison.

9   Defense counsel argued the sentence was too long and said:

10   "[Defense counsel]: . . . I have three very brief witnesses I'd like to
call. [Defendant] and two of his relatives who would not be

11   lengthy.

12   "THE COURT: I'll decline the request.

13   "[Defense counsel]: May I call [defendant]?

14   "THE COURT: I'll decline the request.

15   '[Defense counsel]: May I make an offer of proof in regards to
what [defendant] would say?

16

17   "THE COURT: You may.

18   "[Defense counsel]: Your Honor, . . . the probation report . . . says,
'His action and demeanor portray a classic stalker.' Now, I'm
coming to the part I'm concerned with. 'And to this day he swears

19   Ms. Runyon is his wife.' [¶] If [defendant] were to testify, he
would say that is absolutely not true. In fact, he declined to make

20   any statements, oral or in writing to the probation officer."

21   The trial court agreed the probation report stated defendant elected
not to make a statement when the probation officer went to

22   interview him.

23   The defense asked the court to strike the statement that defendant
swore Runyon was still his wife, and also to strike another sentence

24   in the probation report, that defendant "continues to maintain he is
not responsible for actions that are attributed to him." The defense

25   argued it was unknown where these statements came from, but they
did not come from defendant and were not true.

26   /////

9

The court replied, "It seems to me that from the state of the evidence at the trial and what occurred at the trial, the Court can only ascribe the mental state or outlook of [defendant] with the documents in connection with the trial proceedings and evidence that was presented at the trial because I don't have a statement from him from that time forward. I'll accept your offer of proof."

Defense counsel thanked the court and said, "to the extent that these statements are in the probation report and may have swayed the Court in a position that is more harmful to [defendant], I would ask the Court to reconsider any position it made based upon these statements. I don't believe they should be in this report. With those comments I'll submit it, your Honor."

The court noted that, at the time of these offenses, defendant was on probation after being convicted in a different case of criminal threats against Runyon, and a condition of probation was leaving Runyon alone, which he failed to do. The court noted the disparity between defendant's courteous behavior in court and his rants on the tape-recorded phone messages left by defendant despite being on probation for the same kind of misconduct. The court added defendant placed the victims in a "state of terror" in their own home.

The court imposed sentence in accordance with its tentative decision.

**B.  Analysis**

Defendant contends he is entitled to a new sentencing hearing because the trial court prejudicially erred in refusing to allow him to present evidence. We disagree.

As to the two witnesses other than defendant, defendant has forfeited any challenge on appeal by failing to state in the trial court the substance, purpose, and relevance of what these witnesses would say.

Thus, Evidence Code section 354 says, "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:

"(a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means;

"(b) The rulings of the court made compliance with subdivision (a) futile; or

10

"(c) The evidence was sought by questions asked during cross-examination or recross-examination."

Here, defendant made no offer of proof and failed to make known to the court by any other means the substance, purpose, and relevance of the excluded evidence.  We see nothing in the record that would have made compliance with subdivision (a) futile (Evid. Code, § 354, subd. (b)), and the evidence was not sought by questions asked during cross-examination or recross-examination (Evid. Code, § 354. subd. (c)).

Accordingly, we need not address the matter of the two witnesses because defendant failed to preserve the issue for appeal.  (People v. Foss (2007) 155 Cal. App.4th 113, 126-128.)

As to defendant's desire to speak at the sentencing hearing, even assuming for the sake of argument that the trial court erred in refusing to let him speak, any error was harmless beyond a reasonable doubt.  (Boardman v. Estelle (9th Cir. 1992) 957 F.2d 1523, 1530 [denial of defendant's right to speak at sentencing is error in the conduct of trial, not structural defect in the trial process]), because the trial court accepted the offer of proof as to what he would have said – i.e., that he never made the statements attributed to him in the probation report.  Indeed, the trial court agreed defendant had not made any statement to the probation officer and thus disregarded those statements in the report.

Defendant says that, although his lawyer indicated only that defendant wanted to refute the probation report, "It is clear" and "apparent" that defendant would have gone further and "would have taken responsibility and expressed remorse."  Defendant says that at the time of sentencing he had been incarcerated for over three years.  He argues it is "reasonable to assume" that he used that time to reflect on his actions and came to assume responsibility.  However, defendant testified at trial a mere three months before sentencing, without expressing remorse and without accepting responsibility.  His testimony was full of denials and claims of lack of recall.

Moreover, defendant says in his reply brief that his argument is defeated (but preserved for federal review) by the recent filing of People v. Evans (2008) 44 Cal.4th 590, which held a defendant is not entitled to offer at sentencing a personal uncross-examined statement in mitigation of punishment.

We conclude defendant is not entitled to a new sentencing hearing.

(Doc. No. 27 (Answer) at 21-25.)

/////

11

1    The right of a criminal defendant to address the court personally, to speak on his

2 own behalf, and to offer information in mitigation of his sentence, is a right that has been

3 protected since the time of English common law.  See Green v. United States, 365 U.S. 301, 303-

4 04 (1961).  The purpose of the right of allocution is to provide the defendant "the opportunity to

5 present to the court his plea in mitigation."  Id. at 304.  Defense counsel's argument for

6 mitigation cannot replace the defendant's right of allocution because "[t]he most persuasive

7 counsel may not be able to speak for a defendant as the defendant might, with halting eloquence,

8 speak for himself."  Id.; See also United States v. Laverne, 963 F. 2d 235, 236 (9th Cir. 1992).[5]

9    Notwithstanding this history in the common law, the Supreme Court has not held

10 that the right of allocution is a right protected by the United States Constitution.  In Green, the

11 Supreme Court affirmed the sentence of a federal criminal defendant who claimed he had been

12 denied his right to allocute as guaranteed by Rule 32(a) of the Federal Rules of Criminal

13 Procedure.  The court looked to the common law tradition of personal allocution and construed

14 Rule 32(a) as creating a personal right even though the language of the rule 32(a) did not clearly

15 do so.  365 U.S. at 302.  The Supreme Court concluded, however, that under the circumstances

16 of that case the defendant had not carried his burden of proving that he was denied his right to

17 address the court.  The court in Green did not hold that a criminal defendant's right to allocution

18 at the time of sentencing is protected by the Due Process Clause.  It simply interpreted Rule 32(a)

19 in light of its common law origins.

20    In Hill v. United States, 368 U.S. 424 (1962), the Supreme Court held that a

21 federal trial court's failure to follow the formal requirements of Rule 32(a) by inquiring of a

22 defendant represented by counsel whether he had anything he wished to say to the court before

23

24    [5]  The right of allocution prior to the imposition of sentence is required in federal courts
by Federal Rule of Criminal Procedure 32(c)(3)(C) which provides, in pertinent part:

25

26    (3) Imposition of Sentence.  Before imposing sentence, the court must:
(c) address the defendant personally and determine whether the defendant wishes
to make a statement and to present any information in mitigation of the sentence.

12

1    sentence was imposed, was not cognizable in a later habeas challenge to the sentence brought

2    under 28 U.S.C. § 2255.   It held that a federal court's failure to comply with the Federal Rules of

3    Criminal Procedure in this regard was an error which was neither jurisdictional nor

4    constitutional.   Thus, under the holding in Hill, a criminal defendant has no constitutional right to

5    be asked whether he wishes to allocute prior to sentencing.  368 U.S. at 427.

6              The Supreme Court has not yet decided whether it violates due process to reject a

7    defendant's affirmative request for allocution.  See McGautha v. California, 402 U.S. 183, 218,

8    n. 22 (1971) ("[In Hill], the Court reserved the issue whether silencing a defendant who wished

9    to speak would rise to [the] level [of constitutional error].  [citation omitted]  We have not since

10   had occasion to deal with this or related problems at length."), judgment vacated on other

11   grounds by Crampton v. Ohio, 408 U.S. 941 (1972); see also Fontenot v. Blackletter, 2006 WL

12   2318308, at *3 (D. Or. Aug. 8, 2006) ("[T]he Supreme Court has refrained from recognizing

13   explicitly the same constitutional right [to speak at a sentencing hearing] for defendants in state

14   court proceedings.").  The Ninth Circuit, however, has held that it does.  Boardman v. Estelle,

15   957 F.2d 1523, 1530 (9th Cir. 1992) ("We hold that allocution is a right guaranteed by the due

16   process clause of the Constitution.  Our holding is limited to circumstances in which a defendant,

17   either unrepresented or represented by counsel, makes a request that he be permitted to speak to

18   the trial court before sentencing.  If the trial court denies that request, the defendant has not

19   received due process"); see also United States v. Silva, 472 F.3d 683, 686-87 (9th Cir. 2007).

20   Nonetheless, the Ninth Circuit held that the denial of a defendant's constitutional right to

21   allocution is subject to harmless error analysis.  Boardman, 957 F.2d at 1530.  On collateral

22   review of a state court criminal judgment under 28 U.S.C. § 2254, an error is harmless unless it

23   had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

24   Abrahamson, 507 U.S. 619, 631 (1993).  See also Fry v. Pliler, 551 U.S. 112, 121-22 (2007).

25   "When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a

26   federal court may not grant habeas relief unless the state court's determination is objectively

13

1    unreasonable." Towery v. Schriro  641 F.3d 300, 307 (9th Cir. 2010).

2           California law requires that the trial court ask the defendant whether he has any

3    legal cause why judgment should not be pronounced against him.  Cal. Penal Code

4    § 1200.  However, a response by defendant's counsel to that inquiry satisfies a defendant's right

5    of allocution under state law.  People v. Wiley, 57 Cal. App.3d 149, 166 (1976), disapproved on

6    other grounds, People v. Wheeler, 22 Cal.3d 258, 286 n. 35 (1978); see also People v. Sanchez,

7    72 Cal. App.3d 356, 359-60 (1977) (No abuse of discretion found where the court failed to ask

8    whether the defendant personally wished to speak.)  In terms of a statement in mitigation by the

9    defendant, the California Supreme Court has held:

10             California law, through section 1204, gives a criminal defendant
                 the right at sentencing to make a sworn personal statement in
11             mitigation that is subject to cross-examination by the prosecution.
                 This affords the defendant a meaningful opportunity to be heard
12             and thus does not violate any of defendant's rights under the
                 federal Constitution.

13

14   People v. Evans, 44 Cal. 4th 590, 600 (2008).

15           Here, the California Court of Appeal determined that even if petitioner was denied

16   his right of allocution at the sentencing proceedings, any such error was harmless.  The

17   undersigned agrees.  As noted by the state appellate court, the sentencing court accepted defense

18   counsel's representation as to what petitioner would have said had he testified at his sentencing

19   hearing, and the court agreed with defense counsel's position that petitioner had not made the

20   remarks attributed to him in the probation report.  To the extent petitioner is now arguing that he

21   might have said anything other than what defense counsel proffered on his behalf and that these

22   additional comments might have induced the sentencing judge to impose a more lenient sentence,

23   his claim is speculative and fails to establish prejudice.  Also speculative is petitioner's claim

24   that he was improperly denied the right to have other witnesses testify at his sentencing hearing.

25   Assuming arguendo that the right to call witnesses is included in a defendant's right to

26   allocution, petitioner has failed to demonstrate, or even suggest, what his proposed witnesses

14

1   would have said.  Under these circumstances, there is no evidence before this court that the state

2   trial court's decision to decline the defense request to call two of petitioner's relatives to testify

3   briefly at his sentencing hearing had a substantial or injurious effect on the sentence petitioner

4   received.

5          Petitioner has also failed to establish that the decision of the California Court of

6   Appeal rejecting his claim that his right of allocution was violated is contrary to, or an

7   unreasonable application of federal law.  Accordingly, he is not entitled to relief on this claim.

8          B.  Cruel and Unusual Punishment

9          In his second claim for federal habeas relief petitioner argues that his sentence of

10  78 years to life in prison constitutes cruel and unusual punishment, in violation of the Eighth

11  Amendment to the United States Constitution.  He argues that his sentence is "akin to life-

12  without-parole" and is disproportionate to his crime.  (Pet. at 4.)

13         In the published portion of its opinion, the California Court of Appeal rejected

14  these arguments, reasoning as follows:

15         **IV. Cruel and/or Unusual Punishment**

16         Defendant contends the aggregate sentence of 78 years to life in
           prison constitutes cruel and/or unusual punishment under the
17         Eighth Amendment of the federal Constitution ("cruel and unusual
           punishments [shall not be] inflicted"), and article I, section 17, of
18         the California Constitution ("Cruel or unusual punishment may not
           be inflicted or excessive fines imposed").
19
           Defendant complains he will not be eligible for parole for more
20         than 77 years, i.e., when he is 119 years old.  His only cited
           authority is In re Cervera (2001) 24 Cal.4th 1073, 103 Cal. Rptr.2d
21         762, 16 P.3d 176, which held the three strikes law does not allow a
           third strike felon, sentenced to life in prison with a minimum of 25
22         years, to be awarded prison conduct credits for use against the
           mandatory indeterminate term of life imprisonment or the 25 year
23         minimum.  The People do not challenge, and we accept for
           purposes of this appeal, defendant's assertion that he will not be
24  /////

25  /////

26  /////

15

eligible for parole until he is 119 years old.  Section 3046[6] prescribes generally the minimum periods for parole eligibility. Section 3046 is subject to three strikes sentencing, such that a defendant is ineligible for parole during the minimum term of the three strikes sentence (§ 667, subd. (e)(2)).  (People v. Acosta (2002) 29 Cal.4th 105, 113–114, 124 Cal. Rptr.2d 435, 52 P.3d 624.)

We shall conclude defendant's sentence does not constitute cruel and/or unusual punishment.

**A. United States Constitution**

The Eighth Amendment prohibits imposition of a sentence that is "grossly disproportionate" to the severity of the crime.  (Ewing v. California (2003) 538 U.S. 11, 20–21, 123 S. Ct. 1179, 155 L. Ed.2d 108; People v. Carmony (2005) 127 Cal. App.4th 1066, 1076, 26 Cal. Rptr.3d 365.)  In a noncapital case, however, successful proportionality challenges are "exceedingly rare." (Ewing, supra, 538 U.S. at pp. 20–21, 123 S. Ct. 1179 [sentence of 25 years to life in prison for felony theft of golf clubs under California's three strikes law, with prior felonies of robbery and burglary, did not violate federal prohibition on cruel and unusual punishment].)  In the rare case where gross disproportionality can be inferred from (1) the gravity of the offense and harshness of the penalty, the court will consider (2) sentences imposed for other offenses in the same jurisdiction and (3) sentences imposed for commission of the same crimes in other jurisdictions.  (Harmelin v. Michigan (1991) 501 U.S. 957, 1005, 111 S. Ct. 2680, 2707, 115 L. Ed.2d 836, 871 [sentence of life in prison without possibility of parole, for possessing 672 grams of cocaine, was not cruel and unusual punishment].)  "[I]t is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and

---

[6]  Section 3046 provides in part:

"(a) No prisoner imprisoned under a life sentence may be paroled until he or she has served the greater of the following: [¶] (1) A term of at least seven calendar years. [¶] (2) A term as established pursuant to any other provision of law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole.

"(b) If two or more life sentences are ordered to run consecutively to each other pursuant to Section 669, no prisoner so imprisoned may be paroled until he or she has served the term specified in subdivision (a) on each of the life sentences that are ordered to run consecutively . . . ."

third criteria come into play." (People v. Meeks (2004) 123 Cal. App.4th 695, 707, 20 Cal. Rptr.3d 445, citing Harmelin v. Michigan, supra, 501 U.S. 957 at p. 1005, 111 S. Ct. at p. 2707, 115 L. Ed.2d at pp. 871–872 (conc. opn. of Kennedy, J.).)

**1. Gravity of Offense/Harshness of Penalty**

The gravity of offenses can be assessed by comparing the harm caused or threatened to the victim or society and the culpability of the offender with the severity of the penalty. (Carmony, supra, 127 Cal. App.4th at p. 1077, 26 Cal. Rptr.3d 365.) Carmony was one of the rare cases where punishment was disproportionate. There, the defendant received a sentence of 25 years to life in prison for failing to update his sex offender registration within five days of his birthday, where he had registered a month before his birthday, was still at the same address, his prior felonies were committed long before the current offense, and the current offense was a nonviolent regulatory offense that posed no direct or immediate danger to society. (Id. at pp. 1078–1082, 26 Cal. Rptr.3d 365.)

Here, the current offenses caused or threatened harm and violence to the victims. Defendant terrorized them with relentless phone calls threatening vile acts of violence. He disrupted their lives to such an extent that they were afraid to sleep. He displayed willingness to follow through with his threats by going to the victims' home with a knife.

Defendant suggests the prosecutor overcharged the case by charging six counts, because she told the jury in closing argument, "the main point of this case is actually Count 6, which is the stalking count. Kind of the cloud that everything goes within." Defendant says that (leaving aside the three strikes law) the other five counts were "wobblers," four of which (criminal threats) have an aggravated term of three years and therefore must be considered "low grade" felonies. The stalking count (with a prior stalking conviction) was punishable by two, three, or five years. (§ 646.9, subd. (c)(1)-(2).) The assault count carried a maximum penalty of four years. Defendant says the maximum penalty for all six counts imposed consecutively (which would violate section 654) would be nine years, eight months (not counting the three strikes sentencing). However, we question defendant's calculations, and in any event it is ludicrous to view the criminal threats as low grade felonies in light of defendant's actions in going to the victims' home armed with a knife and a stated intent to carry out his threats. (People v. Martinez (1999) 71 Cal. App.4th 1502, 1510, 84 Cal. Rptr.2d 638 [though crimes were wobblers in the abstract, they were dangerous under the circumstances].) Moreover, we do not view the current crimes in isolation but also consider defendant's recidivism, as we discuss post.

/////

Defendant says the gunshot wound to his groin, necessitating surgical removal of his testicle, constitutes punishment that should be taken into account.  He claims the verdict does not indicate whether Cole was justified in shooting defendant and it is doubtful the jury believed the shooting was necessary.  Defendant points out he did not physically injure anyone.  Defendant cites no authority supporting his position, and we see no reason why defendant should get a break in sentencing due to his injury (for which he can only blame himself) or his inability to carry out his threats (for which he cannot take credit).

In considering the harshness of the penalty, we take into consideration that defendant is a repeat offender whom the Legislature may punish more severely than it punishes a first-time offender.  (Ewing, supra, 538 U.S. at pp. 24–26, 123 S. Ct. at pp. 1187–1188, 155 L. Ed.2d at pp. 119–120.)  Yet we also have in mind that, because the penalty is imposed for the current offenses, the focus must be on the seriousness of these offenses.  (Witte v. United States (1995) 515 U.S. 389, 402–403, 115 S. Ct. 2199, 2207–2208, 132 L. Ed.2d 351, 366; Carmony, supra, 127 Cal. App.4th at p. 1079, 26 Cal. Rptr.3d 365.)  "Past offenses do not themselves justify imposition of an enhanced sentence for the current offense.  [Citation.]  The double jeopardy clause prohibits successive punishment for the same offense. [Citations.]  The policy of the clause therefore circumscribes the relevance of recidivism. [Citations.]  To the extent the 'punishment greatly exceeds that warranted by the aggravated offense, it begins to look very much as if the offender is actually being punished again for his prior offenses.' [Citation.]"  (Carmony, supra, 127 Cal. App.4th at p. 1080, 26 Cal. Rptr.3d 365.)

Defendant argues the effect of his sentence is a life sentence without possibility of parole, because he will not be eligible for parole until he is 119 years old.  (In re Cervera, supra, 24 Cal.4th at p. 1081, 103 Cal. Rptr.2d 762, 16 P.3d 176 [third strike felon sentenced to life in prison with a minimum of 25 years could not have his minimum term of 25 years reduced with good conduct credits].)  Defendant cites a concurring opinion by Justice Mosk in People v. Deloza (1998) 18 Cal.4th 585, 76 Cal. Rptr.2d 255, 957 P.2d 945, that a sentence is cruel and unusual if it is so long that it cannot be fully served by a human being.  However, in People v. Byrd (2001) 89 Cal. App.4th 1373, 108 Cal. Rptr.2d 243, we expressly disagreed with Justice Mosk's nonbinding concurrence, and we said imposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel and/or unusual punishment.  (Id. at p. 1383, 108 Cal. Rptr.2d 243 [no cruel or unusual punishment in sentence of 115 years plus 444 years to life for 12 counts of robbery plus mayhem, and attempted premeditated murder, with personal discharge of firearm, and three priors].)

/////

18

People v. Sullivan (2007) 151 Cal. App.4th 524, 59 Cal. Rptr.3d 876, upheld against a challenge of cruel and/or unusual punishment a sentence of 210 years to life in prison for conviction of six counts of robbery, with two prior serious felony convictions and two prior prison terms. (Id. at pp. 568–571, 59 Cal. Rptr.3d 876.) Sullivan said the current offenses – a series of robberies which included threatened acts of violence with a deadly weapon – "must be considered acts of a most heinous nature." (Id. at p. 570, 59 Cal. Rptr.3d 876.) The defendant was "an incorrigible recidivist offender who presents a most grave and extreme level of danger to society." (Ibid.)

Defendant argues Sullivan is distinguishable because the defendant there committed six robberies in less than three months, while on "escape status," while claiming to have a gun, and he had an extensive history of serious felonies dating back many years plus two prior prison terms. Defendant says his own criminal history is mostly misdemeanors, and he only has one prior prison term. However, defendant here committed six current offenses threatening violence while on probation for the same type of conduct. He had enough serious felonies to trigger the three strikes law. In addition, he acknowledges a long history of misdemeanors, as follows:

In 1984 (at age 20), he was convicted of misdemeanor assault, served some jail time and was placed on probation. He had three vandalism convictions, two with resisting arrest, in 1990, 1991, and 1992. The first vandalism case, which included being drunk in public, resulted in a 30 day sentence with no probation. The second and third cases each resulted in one year of probation. Also in 1992, defendant received two years of probation for a misdemeanor assault conviction. In January 1994, he got 18 months of probation for petty theft. In July 1994, he got three months' probation for misdemeanor spousal abuse. Two months later, he was fined for marijuana possession. In January 1998, he got three years' probation for misdemeanor spousal abuse.

As to felonies, defendant acknowledges he had four prior felony convictions: (1) 1988 marijuana possession (probation); (2) 1998 spousal abuse (a felony that was supposed to be reduced to a misdemeanor on completion of probation, which he did not complete); (3) 1999 battery with serious injury for punching someone in the face and breaking his jaw (two year prison sentence), which serves as defendant's "first strike" in the current case; and (4) 2003 criminal threats and stalking to which he pled no contest pursuant to a plea deal and was placed on probation (defendant's "second strike" in the current case).

Defendant looks at his criminal record and says, "Thus, [defendant] at 42 years old had served only one prison term and that prison term was only two years. Thus, his record would not

19

justify life without parole."  He views the past leniency in sentencing as proof that the criminal justice system did not regard him as dangerous.

In contrast, we look at his record and see a relentless recidivist who repeatedly thumbs his nose at an overly generous criminal justice system, demonstrating that he is indeed a danger.

Defendant argues the prosecutor's pretrial offer of 25 years to life in prison with a plea to any one count (which defendant rejected) indicates the prosecutor did not believe a longer sentence was necessary for public safety.  Defendant cites Reyes v. Brown (9th Cir. 2005) 399 F.3d 964, which remanded a case for further evidence but said in a footnote that the court's "suspicion" that the defendant's 26 years to life sentence under the three strikes law for perjury on a driver's license application may be disproportionate was supported by the fact the prosecutor had offered a plea deal of four years in exchange for a guilty plea.  (Id. at p. 969, fn. 9.)  "By offering [the defendant] such a heavily discounted sentence, an inference may properly be raised that the State did not view [the defendant] as a 'danger to society' and that the State did not feel 'the need to counter his threat with incapacitation.'"  (Ibid., citing Lockyer v. Andrade (2003) 538 U.S. 63, 81, 123 S. Ct. 1166, 155 L. Ed.2d 144, Souter, J., dissenting.)

Reyes is distinguishable.  The offer there was for four years, which is a relatively short period of time; the sentence was more than six times the offer; and the triggering offense involved no threat of violence.  Rather, it involved the defendant filling out a driver's license application under his cousin's name in an attempt to get a license for his illiterate cousin.  (Reyes, supra, 399 F.3d at p. 965.)  Here, the offer was for 25 years, which is a substantial period of time; defendant's sentence is only three times the offer; and the triggering offenses involved assault with a deadly weapon and terrorizing threats of violence.

The penalty is not grossly disproportionate to the gravity of the offenses.  We therefore need not discuss defendant's arguments about intrastate and interstate comparisons regarding his federal claim (Meeks, supra, 123 Cal. App.4th at p. 707, 20 Cal. Rptr.3d 445, citing Harmelin v. Michigan, supra, 501 U.S. at p. 1005, 111 S. Ct. at p. 2707, 115 L. Ed.2d at p. 871–872 (conc. opn. of Kennedy, J.)), though we will discuss them regarding the broader California constitutional claim.

We conclude defendant's sentence does not violate the United States Constitution's prohibition against cruel and unusual punishment.

/////

/////

20

**B. California Constitution**

Whereas the federal Constitution prohibits cruel "and" unusual punishment, California affords greater protection to criminal defendants by prohibiting cruel "or" unusual punishment.  (In re Lynch (1972) 8 Cal.3d 410, 424, 105 Cal. Rptr. 217, 503 P.2d 921; Carmony, supra, 127 Cal. App.4th 1066, 1085, 26 Cal. Rptr.3d 365.)  Under the California Constitution, punishment is disproportionate if it "shocks the conscience" and offends fundamental notions of human dignity, considering the offender's history and the seriousness of his offenses.  (Lynch, supra, 8 Cal.3d at p. 424, 105 Cal. Rptr. 217, 503 P.2d 921.)  We first examine the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.  (Carmony, supra, 127 Cal. App.4th at p. 1085, 26 Cal. Rptr.3d 365.)  Relevant factors include the facts of the current crimes, the nature of the offenses, aggravating circumstances, violence, whether there are rational gradations of culpability that can be made on the basis of the injury to the victim or to society in general, and penological purposes of the prescribed punishment.  (Ibid.)  Second, we compare the penalty with penalties prescribed in California for different, more serious offenses.  (Ibid.)  Third, we compare the penalty with penalties for the same offenses in other jurisdictions.  (Ibid.)  Our authority is circumscribed by the separation of powers doctrine.  (Id. at p. 1086, 26 Cal. Rptr.3d 365.)

**1. Nature of Offense/Offender**

For the reasons stated in our discussion of the federal Constitution, we conclude defendant's sentence does not shock the conscience and is not grossly disproportionate.  (Carmony, supra, 127 Cal. App.4th at p. 1086, 26 Cal. Rptr.3d 365.)

**2. Intrajurisdictional Comparison**

Defendant says his sentence of 78 years to life in prison is disproportionate to the penalty for other crimes in California, such as 25 years to life for first degree murder without special circumstances (§§ 189, 190, 190.1); 15 years to life for second degree murder (§ 190, subd. (a)); life in prison with parole eligibility in seven years for torture (§§ 206, 206.1); life in prison with parole eligibility in seven years for aggravated mayhem (§§ 205, 3046); three to eight years for rape (§ 264); and three to eight years for kidnapping (§§ 207, 208).  Defendant says his sentence is substantially longer than the sentence for second strike offenders who commit one of these offenses, yet it is not reasonable to conclude that defendant poses a greater risk to the public than such offenders.  Defendant says his sentence is longer than the sentence for habitual sexual offenders.

/////

However, the maximum punishment for the hypothecated first degree murder includes the death penalty, which is more severe than defendant's sentence. (§ 190; <u>Sullivan</u>, <u>supra</u>, 151 Cal. App.4th at p. 571, 59 Cal. Rptr.3d 876.) Moreover, defendant is a third strike offender who committed multiple offenses in the current case, and thus is not comparable to second strike offenders who commit one new offense. (<u>Sullivan</u>, <u>supra</u>, 151 Cal. App.4th at pp. 571–572, 59 Cal. Rptr.3d 876.) Nor is defendant similar to habitual sex offenders who have not threatened to kill their victims.

Defendant's sentence is not out of all proportion to the punishment in California for commission of multiple, serious stalking/ assault/criminal threat offenses by a third strike offender.

**3. Comparison with Other States**

As to interjurisdictional analysis, "if the challenged penalty is found to exceed the punishments decreed for the offense in a significant number of [other] jurisdictions, the disparity is a further measure of its excessiveness." (<u>Lynch</u>, <u>supra</u>, 8 Cal.3d at p. 427, 105 Cal. Rptr. 217, 503 P.2d 921; <u>Carmony</u>, <u>supra</u>, 127 Cal. App.4th at p. 1089, 26 Cal. Rptr.3d 365.)

Defendant notes 11 states have recidivist penalties that allow for sentences of life without parole (which he argues is the effect of his sentence). He cites statutes of Alabama, Delaware, Georgia, Indiana, Louisiana, Maryland, Mississippi, New Jersey, South Carolina, Virginia, and Washington.

Defendant says some states (Louisiana, Maryland, Mississippi, South Carolina, Virginia, and Washington) would not even consider his current crimes as violent felonies for purposes of recidivism laws. For example, he says his convictions for stalking and assault would not qualify as violent felonies under Louisiana's recidivism law. (La. R.S. § 14:2.) He notes the sentence there is six months for aggravated assault and one to five years for stalking where the victim is placed in fear of death or bodily injury. (La. R.S. §§ 14:37, 14:40.2.) However, in Louisiana the sentence for a second stalking conviction is five to 20 years. (La. R.S. § 14:40.) Here, the trial court found true the special allegation that defendant was subject to an enhanced sentence for stalking under section 646.9 because he was previously convicted of stalking.

In any event, the fact that defendant's current offenses might not qualify for recidivist sentencing in other states does not render the California punishment cruel or unusual. "That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual. This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule"

22

or the least common denominator of penalties nationwide.' [Citations.]" (Martinez, supra, 71 Cal. App.4th at p. 1516, 84 Cal. Rptr.2d 638; accord, Sullivan, supra, 151 Cal. App.4th at p. 573, 59 Cal. Rptr.3d 876.)

Defendant mentions other states (e.g., Alabama) where he might receive as long a sentence as he received here, but he contends those states would allow him to be eligible for parole in less time than California allows.  Though defendant does not develop the legal point, we note a comparison of parole ineligibility may afford a basis for a finding of cruel and unusual punishment.  (In re Grant (1976) 18 Cal.3d 1, 16, 132 Cal. Rptr. 430, 553 P.2d 590.)

However, defendant does not demonstrate that the parole eligibility in the other states applies to recidivist offenders.  Rather, he cites (1) sentencing statutes for various offenses with enhancements for recidivism, and (2) general statutes regarding parole eligibility.  He cites no authority of the impact of recidivist sentencing laws on the general provisions concerning parole eligibility.  (E.g., Alabama Code, § 15–22–28 [persons are eligible for parole after serving lesser of 10 years or one-third of sentence, though parole board may release prisoners earlier by unanimous vote]; Delaware Code, tit. 11, §§ 4346, 4217 [defendant sentenced to life in prison is eligible for parole after 15 years, and after serving half of imposed sentence is eligible for sentence modification at request of Department of Corrections for good cause].)

Defendant cites no authority that those general statutory provisions for parole eligibility apply to recidivist offenders under a type of three strikes law.  Indeed, defendant acknowledges one of the states he discusses, Georgia, prohibits parole eligibility for persons convicted of a fourth felony.

We conclude defendant's sentence does not constitute cruel or unusual punishment under the California Constitution.

We conclude defendant's sentence does not constitute cruel and/or unusual punishment under the federal or state Constitution.

Haller, 174 Cal. App.4th at 1087-94.

The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment.  See Harmelin v. Michigan, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).  See also Taylor v. Lewis, 460 F.3d 1093, 1097 (9th Cir. 2006).  However, as noted by the state appellate court, successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare."

23

Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v. Castro, 365 F.3d 755, 775

(9th Cir. 2004).  "The Eighth Amendment does not require strict proportionality between crime

and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the

crime."  Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring) (citing Solem v. Helm, 463 U.S.

at 288, 303).  In Lockyer v. Andrade, the United States Supreme Court held that it was not an

unreasonable application of clearly established federal law for the California Court of Appeal to

affirm a "Three Strikes" sentence of two consecutive 25 year-to-life imprisonment terms for a

petty theft with a prior conviction involving theft of $150.00 worth of videotapes.  Andrade, 538

U.S. at 75. In Ewing v. California, 538 U.S. 11, 29 (2003), the Supreme Court held that a "Three

Strikes" sentence of 25 years-to-life in prison imposed on a grand theft conviction involving the

theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the

Eighth Amendment.[7]

      In assessing the compliance of a non-capital sentence with the proportionality

principle, a reviewing court must consider "objective factors" to the extent possible.  Solem, 463

U.S. at 290.  Foremost among these factors are the severity of the penalty imposed and the

gravity of the offense.  "Comparisons among offenses can be made in light of, among other

things, the harm caused or threatened to the victim or society, the culpability of the offender, and

the absolute magnitude of the crime."  Taylor, 460 F.3d at 1098.[8]

---

[7]  Recently a divided panel of the United States Court of Appeals for the Ninth Circuit
held that a sentence of 26 years to life under California's Three Strikes Law for defendant's
failure to annually update his registration as a sex offender and failure to register within five days
of a change of address did not constitute cruel and unusual punishment, in violation of the Eighth
Amendment.  Crosby v. Schwartz, 678 F.3d 784, 791-92 (9th Cir. 2012).

[8]  As noted in Taylor, the United States Supreme Court has also suggested that reviewing
courts compare the sentences imposed on other criminals in the same jurisdiction, and also
compare the sentences imposed for commission of the same crime in other jurisdictions.  460
F.3d at 1098 n.7.  However,

    consideration of comparative factors may be unnecessary; the Solem Court "did
    not announce a rigid three-part test."  See Harmelin, 501 U.S. at 1004, 111 S. Ct.
    2680 (Kennedy, J., concurring). Rather, "intrajurisdictional and interjurisdictional

1    This court finds that petitioner's sentence does not fall within the type of

2  "exceedingly rare" circumstance that would support a finding that his sentence violates the

3  Eighth Amendment.  The sentence imposed in petitioner case is certainly a significant and

4  arguably harsh penalty.  However, as noted by the California Court of Appeal, petitioner

5  committed numerous crimes involving the threat of violence and he has a lengthy criminal

6  background.  In <u>Harmelin</u>, the petitioner received a sentence of life without the possibility of

7  parole for possessing 672 grams of cocaine.  In light of the <u>Harmelin</u> decision, as well as the

8  decisions in <u>Andrade</u> and <u>Ewing</u>, which upheld sentences of twenty-five years to life for petty

9  theft convictions in the face of Eighth Amendment challenges, the sentence imposed upon

10  petitioner cannot be said to be grossly disproportionate to the severity of the crime.  This is not a

11  case where "a threshold comparison of the crime committed and the sentence imposed leads to an

12  inference of gross disproportionality."  <u>Solem</u>, 463 U.S. at 1004-05.  Therefore, this court need

13  not compare the sentence imposed in petitioner's case to the sentences of other defendants in

14  other jurisdictions.  The state courts' rejection of petitioner's Eighth Amendment claim was not

15  an unreasonable application of the Supreme Court's proportionality standard addressed above.

16  Accordingly, this federal habeas relief with respect to petitioner's cruel and unusual punishment

17  claim under the Eighth Amendment should be denied.

18  /////

19  /////

20  /////

21

22

23

24

25

26

---

analyses are appropriate only in the rare case in which a threshold comparison of
the crime committed and the sentence imposed leads to an inference of gross
disproportionality."  <u>Id.</u> at 1004-05, 111 S. Ct. 2680; see also <u>Rummel v. Estelle</u>,
445 U.S. 263, 282, 100 S. Ct. 1133, 63 L. Ed.2d 382 (1980) ("Absent a
constitutionally imposed uniformity inimical to traditional notions of federalism,
some State will always bear the distinction of treating particular offenders more
severely than any other State.").

460 F.3d at 1098 n.7

C. <u>Sentencing Errors</u>

       1. <u>Abuse of Discretion under People v. Superior Court (Romero)</u>

       In petitioner's next claim for relief, he argues that the trial court abused its

discretion when it refused to strike one of his prior convictions at sentencing in the furtherance of

justice. (Pet. at 5.)  The California Court of Appeal rejected this argument, reasoning as follows:

> Defendant contends the trial court abused its discretion in refusing
> to strike one of his two prior "strike" convictions under section
> 1385,[9] as authorized by <u>People v. Superior Court (Romero)</u> (1996)
> 13 Cal.4th 497.  We disagree.
>
> Defendant asked the court to strike his 2000 conviction for battery
> with serious bodily injury (§ 243, subd. (d)), because the offense
> was "somewhat dated," having been committed in May 1999, and
> he did not use a weapon, and striking the prior would avoid a
> sentence amounting to life in prison without possibility of parole
> and allow defendant the opportunity for release in his 60s, at an age
> where recidivism for violent crime is statistically low.  The trial
> court denied the motion.
>
> A trial court's ruling on such a motion is reviewed under an abuse
> of discretion standard.  (<u>People v. Williams</u>, (1998) 17 Cal.4th 148,
> 162.)  A trial court's decision not to strike a prior conviction is not
> an abuse of discretion unless the decision is so irrational or
> arbitrary that no reasonable person could agree with it.  (<u>People v.
> Carmony</u> (2004) 33 Cal.4th 367, 377.)  Defendant's overall
> criminal record is pertinent in deciding whether to strike a prior
> conviction.  (<u>People v. Superior Court (Alvarez)</u> (1997) 14 Cal.4th
> 968, 979-980.)
>
> Defendant has a long criminal record.  In 1984 (at age 20), he was
> convicted of misdemeanor assault, served some jail time and was
> placed on probation.  He had three vandalism convictions, two
> with resisting arrest, in 1990, 1991, and 1992.  The first vandalism
> case, which included being drunk in public, resulted in a 30 day
> sentence with no probation.  The second and third cases each
> resulted in probation.  Also in 1992, defendant received probation
> for a misdemeanor assault conviction.  In January 1994, he got
> probation for petty theft.  In July 1994, he got probation for
> misdemeanor spousal abuse.  Two months later, he was fined for

---

    [9]  Section 1385 provides in part, "(a) The judge or magistrate may . . . in furtherance of justice, order an action to be dismissed.  The reasons for the dismissal must be set forth in an order entered upon the minutes . . . . [¶] (b) This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667."

26

marijuana possession.  In January 1998, he got probation for
misdemeanor spousal abuse.  As to felonies, defendant had four
prior felony convictions.  In addition to the prior strike he sought to
have dismissed (a 1999 battery with serious injury for punching
someone in the face), defendant had a 1988 conviction for
marijuana possession, 1998 spousal abuse (a felony which was
supposed to be reduced to a misdemeanor on completion of
probation, which he did not complete); and (4) 2003 criminal threat
and stalking to which he pled no contest pursuant to a plea deal and
was placed on probation (defendant's "second strike" in the current
case).

Defendant argues one of his prior convictions should have been
stricken because his total sentence constitutes cruel and/or unusual
punishment.  We reject this constitutional argument, post.

Defendant argues the court should have stricken one of the prior
convictions because he has already suffered a form of punishment,
though not administered by the state, because his left testicle was
surgically removed due to the gunshot wound he sustained at the
hand of his victim, Cole.  Defendant argues his injury should
qualify as a substantial mitigating factor which should reduce his
sentence and justify striking one of his prior convictions.  He also
argues his prior criminal record was no big deal; he is not a "career
criminal"; most of his offenses centered on his ex-wife and he
acknowledges his conduct as reprehensible; and a shorter sentence
would be more than adequate to punish him.

Even assuming for the sake of argument that defendant
acknowledges his conduct as reprehensible – a point unsupported
by the record (including defendant's offer of proof) – we reject his
self-serving characterization of the record.  He has been a criminal
for 20 years.  That defendant has not spent a lot of time
incarcerated is not a point in his favor.  Rather, history shows he
had not learned his lesson despite enjoying leniency from the
criminal justice system.  Moreover, defendant does not get a break
for being injured, since the injury was his own fault.  Additionally,
it is offensive that defendant thinks he should get a break because
more of his offenses were against his ex-wife rather than society as
a whole.  He made her life (and her husband's life) a living hell
and deserves the sentence he received.

We conclude the trial court did not abuse its discretion in denying
defendant's motion to strike one of his prior convictions.  (People
v. Carmony, supra, 33 Cal.4th at pp. 376-380.)

(Answer at 25-28.)

Petitioner's federal habeas challenge to the trial court's denial of his Romero

motion to strike one of his prior convictions at sentencing in the furtherance of justice essentially

27

1 involves solely an interpretation and/or application of state sentencing law. As explained above,

2 "it is not the province of a federal habeas court to reexamine state court determinations on state

3 law questions." Corcoran, 131 S. Ct. at 16 (quoting Estelle, 502 U.S. at 67). So long as a

4 sentence imposed by a state court "is not based on any proscribed federal grounds such as being

5 cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for

6 violation of state statutes are matters of state concern." Makal v. State of Arizona, 544 F.2d

7 1030, 1035 (9th Cir. 1976). Thus, "[a]bsent a showing of fundamental unfairness, a state court's

8 misapplication of its own sentencing laws does not justify federal habeas relief." Christian v.

9 Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

10         The sentencing judge in this case declined to strike any of petitioner's prior

11 convictions only after considering all of the relevant circumstances and applying the applicable

12 state sentencing law. As indicated by the California Court of Appeal, the sentencing judge's

13 conclusion that petitioner did not fall outside the spirit of California's Three Strikes Law was not

14 unreasonable under the circumstances of this case. After a careful review of the sentencing

15 proceedings, the undersigned finds no federal constitutional violation in the state trial judge's

16 exercise of his sentencing discretion under state law.[10]

17         The California Court of Appeal carefully considered the entire record in rejecting

18 petitioner's claims based on the trial judge's refusal to strike one of his prior convictions at the

19 time of sentencing. Its decision with respect to the application of state sentencing law is not

20 contrary to or an unreasonable application of federal law and does not justify the granting of

21 federal habeas relief. Accordingly, petitioner is not entitled to such relief with respect to this

22 claim.

23 _____

24         [10] If petitioner's sentence had been imposed under an invalid statute and/or was in excess
of that actually permitted under state law, a federal due process violation would be presented.
25 See Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where
the petitioner's sentence of life imprisonment without the possibility of parole could not be
26 constitutionally imposed under the state statute upon which his conviction was based). However,
petitioner has not made any showing that such is the case here.

28

1              2.  Imposition of Consecutive Sentences

2              Lastly, petitioner claims that the state trial court erred in imposing consecutive

3  sentences in connection with his various counts of convictions.  He argues that if the court had

4  exercised its sentencing discretion properly, he would have received a "thirty year sentence."

5  (Pet. at 5.)  The California Court of Appeal rejected this claim on state law grounds.  (Answer at

6  28-32.)

7              "The decision whether to impose sentences concurrently or consecutively is a

8  matter of state criminal procedure and is not within the purview of federal habeas corpus."

9  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).   Accordingly, petitioner's

10  challenge to the state sentencing judge's decision to impose consecutive sentences fails to state a

11  cognizable claim for federal habeas relief and should be rejected.

12                                CONCLUSION

13              Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

14  a writ of habeas corpus be denied.

15              These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

17  one days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within fourteen days after service of the objections.  Failure to file

21  objections within the specified time may waive the right to appeal the District Court's order.

22  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

23  1991).  In his objections petitioner may address whether a certificate of appealability should issue

24  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

25  /////

26  /////

1  Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

2  when it enters a final order adverse to the applicant).

3  DATED: August 28, 2012.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:8:
   haller3446.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26